Case number 13-2470, Josephine Vigil v. Regents of University of Michigan at Harvard. Good morning, Your Honors. My name is Neal McConomy. I'm here on behalf of Josephine Vigil, the appellant and underlying plaintiff in this matter. I'd like to reserve three minutes for rebuttal. Very well. This case addresses the fact that although academic institutions receive a certain amount of latitude in making academic judgments, they are still constrained by constitutional principles when making those judgments. Here, the District Court's grant of summary judgment must be reversed because genuine issues of disputed material fact exist. Specifically, the District Court, in its ruling on the defendant's motion for summary judgment, ignored evidence regarding the six-year policy that the University instituted in 2001 not applying to Mr. Vigil. The District Court ignored evidence regarding Mr. Vigil not having any knowledge that defendants planned to kick him out of the University. And the District Court refused to draw inferences in favor of Mr. Vigil as it was required to do under the summary judgment standard. Therefore, genuine issues of disputed material fact exist and require that this case be remanded for Mr. Vigil to receive a hearing on his procedural due process claims and... What would be your relief? I'm a little... Would he get another six years if we agreed with you? Would he just go back and they would file a notice that your paper doesn't make the standards we require? What is your relief? Absolutely, Your Honor, and that is an important issue. This case can have tangible outcomes. And first and foremost, Mr. Vigil does seek equitable relief for reinstatement. And that would allow him to go back to the University of Michigan and possibly find a group of professors that were willing to work with him to complete his dissertation. Or it also allows him to transfer to another institution where he could do so. Right now, having been dismissed, he's got a black mark on his academic record. I assume he'll have that black mark anyway. If he can go down to the trial court and succeed at a trial, then that would have evidence that he was wrongfully dismissed. Yeah, and if he doesn't, that will be judicial evidence then that he was rightfully dismissed. And it would be judicial evidence that would change the standards by... that would have any true benefit to him. Well, as I said, Your Honor, the relief that has a benefit to him is the ability to re-enter the university and either transfer or not. For how long? Until they whip up a complaint and say what you've given us is not up to standards. As well, his other opportunity would be to transfer and having had a positive underlying result in the trial court would make that easier. They're not stopping him from transferring. The question is, what's he transferring for? Well, and Your Honor, the University of Michigan is not saying that he cannot transfer. However, with this dismissal on his record, which is based on academic performance, it makes it much harder to transfer... But if we sent it... you don't answer my question. If we sent it back to the University of Michigan and said, give him notice, and they gave him notice, they would nonetheless dismiss him then. And that is a situation... And that is a situation with procedural due process claims from start to finish, is that if they can go back and follow the procedure, the same result will come forward. However, it does provide a message to the University of Michigan that there are policies and procedures that are important. We're not in the telegraph business. And I understand that, Your Honor, but the situation here is one in which Mr. Vigil had been told that... I wish, frankly, that I had watched... well, I'm sorry... had been given statements such as, I don't want the signal... Is this about you getting a fee as a prevailing party? Pardon me? Is this about you getting a fee as a prevailing party? There are... Because I'm really struggling with what... There are 1983 damages available. However, the situation here is that Mr. Vigil seeks readmission to continue his dissertation. And he wants to finish that PhD. It's been a goal of his since he left... We can't do any more than, say, give him his hearing. Right. And he wants to be able to show... And he's got nothing to show them other than what he's already done. And so he's going to be dismissed. And so you're going to be right... he's going to be in the same situation. The only winner I see is you as a prevailing party. I don't believe that's correct, Your Honor. First of all, to send him back to the university if he succeeds at the trial court, which allows him an opportunity to talk about... He doesn't have to succeed. If we rule he's entitled to due process and set him back, it ends here. But we're not asking you to state that he's entitled to due process and that he didn't receive it down below. What we're asking is for you... Well, you are. Isn't that your argument? Well, this is a summary judgment situation. So what we're saying is that there are issues of material fact. There are issues that a fact finder could find that he's entitled to procedural due process, right? Absolutely. But the process is not a hearing. You agree that the law is clear that he's not entitled to a hearing, right? We have suggested that under Marx there's a possibility that the narrowest holding in the Horowitz opinion... You're saying that... ...have sort of misapplied Marx to the Supreme Court decision? That is an argument that we have made. However, I believe that under... But you assume that that's a non-starter, just for the assumption purposes, that he doesn't get a hearing. Absolutely. He just gets something. And it sounds like the something you want is more time... No... ...whereby he could create this committee and the committee would look kindly on what the committee has unanimously found to be facially insufficient for a doctoral thesis, right? That's what, in the end, you want, right? In the end, Mr. Vigil would like an opportunity to return and work with that. And you think our holding that he should have greater opportunity to show this is going to take away the black mark that is the fact that for a long time he couldn't even get a committee that would... And it's the same committee... So our saying you get to keep arguing about that, I don't see how that's going to cause some other university to admit him. I'm just finding that all that is a procedural thing. They're not going to say, oh, we'll admit him because some court said that he had further chances to do what he wasn't able to do originally. It does provide some evidence to Mr. Vigil in applying, stating that he's, for example, if he were to choose to transfer, he's sort of saying that we liked his thesis? No, and this is, I think the bigger situation here is that Mr. Vigil will have some credence to his statement that besides starting to draft his dissertation in 2001, he didn't receive feedback until 2005. In 2005, his advisor had stated, this committee's been together and we haven't ever met on this guy. And so there's a situation where he was left out in the wind to draft these dissertations. He didn't get these e-mails which said that this isn't up to standard? Pardon me, Your Honor? He didn't get these e-mails from the various members of the committee that he selected saying that this is not up to standard? Those e-mails and the letters start in 2004. When was he finally dismissed? 2007. Okay, so for the three years pending up to dismissal, he gets unanimous views from his committee that this is not going to work. I mean, I used to be in academia. I have a certain sympathy for what he's going through. It's pretty miserable. But on the other hand, in academic programs, sometimes people fail out. It's sad, but sometimes they fail out. A, I'm not sure it helps them to keep letting them go ahead and try when they're failed out. But B, academic institutions have to have the ability to say, you failed out, don't they? Absolutely, and they do have that opportunity. Well, but without a hearing, at least at the doctoral level, without a hearing, and it has to be what our precedents say, some of them at least. It has to be regular. It can't be unfair in some sense. It can't be, I don't know. I can imagine situations where it might be a violation of due process. They say, well, you're a member of a social group, so you can't keep going. That would be, you can't do stuff like that. But if they're doing it based on the quality of the academic output, who are we to say, well, that's good enough? As long as they've explained to him that this is unsatisfactory, and it's up to him, it's clearly up to him to create a committee, right? At least that's what they've told him. And it's not like they didn't tell him that he didn't have to create a committee. No, absolutely, but I think that what we want to look at there is that the Want more time. I don't see what you want, but more time. The situation in terms of more time goes back to the fact that Mr. Vigil, which these claims are not before the Court, had felt that he was not adequately guided at the university. Whether or not that's true, the bottom line is that if the You have a procedural due process right to more guidance, though, right? No, and so what we're saying, though, is you do have a procedural due process right to adequate notice, which does not just include Notice of what? It includes both notice of the faculty's dissatisfaction and notice of the danger that that dissatisfaction poses to his continued enrollment. You don't think in a Ph.D. program, if every member of your committee says this is a non-starter, that that's not notice that you're not meeting the standard? What I find is that under these facts, not in this situation. Why not? Because there are statements made to him, such as Professor Herzog in 2005 saying, I don't want the signal to you or to the department to be that this project is dead. If you can find a replacement committee member who views the project less unfavorably than I do, that's fine by me. I don't see how that's not telling him that according to that member, he just hasn't been able to do it, trying to do it in a nice way. And that possibly he should go and find someone else to work with in order to get it finished. What I see here is a situation where the institution continued to tell him, go replace this committee member, go get someone else. There was no required timeline that affected Mr. Vigil. I understand the time, Ari, but you're saying he gets a lot more time or some more time. It can't be that just because he hasn't been notified. I'm wondering whether it is that just because he hasn't been notified that the time is six years, even though for everybody for ten years it has been six years, that that means he just gets time indefinite, ongoing. Time and more time. As long as no one has said you're out of time, he gets to go. And they can't say he's out of time because they haven't given him notice of the time limit that they've given to other people. So he gets to just keep doing this on and on and on and on? Absolutely not. What gets him to be the time has stopped? When he has noticed that the faculty is dissatisfied and if you can't produce something that's going to satisfy them. Assume that we read the record to say the faculty was dissatisfied. And you well should. And what I'm saying is that the other half of that is he needed to know that whether you can find someone new or not, if you can't produce a draft that's defendable in this amount of time, he needs to be given a time limit as a procedural due process. He can't just be told after a while we're going to fail you out. He has to be given a time limit. Is that the argument? I understand that argument. I want to make sure that's your argument though. In a situation such as this where there are statements being made to him that make it appear like if you can just go work here, if you can do this, if you can do that, and there's no one setting forward the situation that he may be dismissed, and then suddenly he receives a letter that, oh, under this policy we're kicking you out when the policy didn't even apply? Yes. He should have more time until they properly give him that information. Good morning, Your Honors. Morning. Donika Thomas Bonner on behalf of the defendant appellee, Dr. E.D. Goldenberg. I'm with the Office of the General Counsel of the University of Michigan. It's clear that Your Honors are familiar with the facts and the legal arguments. I'd like to spend my time just focusing very briefly on the points that you've already raised. With regard to the procedural due process argument, it is clear and without question that Horowitz is binding and controlling precedent. It is not a plurality opinion. Five justices of the United States Supreme Court held quite clearly that for academic dismissals a hearing is not required. And this court, the Sixth Circuit Court of Appeals, has routinely held that a hearing is not required for academic dismissals. Further, just to belabor the point just a little longer, 11 circuits, court of appeals, 11 of them have similarly held that hearings are not required. In this case, it appears that Mr. Vigil is arguing that he never received notice of the candidacy requirement, the time to degree requirement. I don't think that that is sufficient argument to reverse the trial court's well-reasoned opinion. Can't Horowitz be read to mean that the student is to be made aware of the threat to his continuing enrollment and that that's something that was not done here? Your Honor, if you look at the cases regarding what's appropriate procedural due process, it's clear that it's contextual and that firm procedural rules, particularly in academic dismissals, are not necessarily helpful. We have to look at the fact that this is a graduate school program, mature adults, people who have at least earned one, possibly more degrees, with the understanding that ultimately you will either produce a quality dissertation that meets the approval of your dissertation committee, or if you don't, you will be dismissed. So the fact that he claims he may not have known that he did not get notice of the six-year rule is not dispositive because he should have been aware that he would never get a degree if he did not produce a quality dissertation. And I think this court can presume that he received notice. Excuse me for interrupting you. On page 85 of Horowitz, it talks about the student needing to be informed of the school's dissatisfaction with their academic progress and the danger that is posed to his timely graduation, continued enrollment. That wasn't done here, was it? It was done multiple times, Your Honor. No, he wasn't told that he was getting ready to be kicked out. At least I don't see it anywhere in the record if he didn't do certain things. Is there somewhere in the record you could show me that he was told that? Yes, Your Honor, several places. Beginning January 10, 2006, record 37-1, page ID 4492, Dr. Goldenberg wrote to Mr. Vigil and said, You must form a four-member committee, and you need to confirm with me in writing that your two remaining committee members are satisfied with your work. This was 20 months before his ultimate dismissal. No, no, I'm not talking about that. I'm talking about where he's told that his work is unsatisfactory, and if he doesn't improve or meet certain requirements, he's going to be dismissed from the program. And that language doesn't say anything like that. Do you have where he was told that his performance was unsatisfactory, and if he didn't improve or meet certain specified requirements, he was going to be dismissed from the program. That's what I don't see in the record anywhere. Can you find that anywhere in the record? Plaintiff concedes that his work was unsatisfactory. I didn't ask you that. Wait, we can't both talk at the same time. Asking you where the school told him that he had to do this, and if he didn't, he would face consequences. That's what I'm trying to find in the record, and you're not pointing me to anything that says that. My argument, Your Honor, is that the record is clear. Mr. Vigil understood that his work was unsatisfactory, and that the university is not required in a very detailed way to identify each and every consequence. It is enough to provide notice of the expectations for continued enrollment. The careful and deliberate standard in academic judgment requires that the faculty be able to evaluate each student's academic performance without obligation to outline specifically, if you don't do this, this will happen. It would be nice if they had a time limit. Well, they did. The issue is he's claiming he didn't know it. He's claiming that he didn't know and that it doesn't apply to him. Presumably because it's nicer to have a time limit, that's why you all came up with a time limit. It is helpful. So the issue really comes down to, does he need notice of a time limit? And I don't believe he does, Your Honor, because as a graduate student, an adult, mature student... You should know that after a while your time is up. Correct, Your Honor. And the policy... Are you saying you should know after a while that your time is up? There is a case that says that what we're required to do is to make sure that the student is aware of the faculty's dissatisfaction with his work and ultimately the general consequences. And it should be well understood that at the time of his dismissal, he did not have a full committee. He did not have a chair. He had not revised or created a new manuscript. All of those he's supposed to do? Yes. It's a requirement of the graduate student to create a committee, a four-person committee, and to identify a chair and create a quality work product that is approved by that committee. What would be the harm of just letting him go on? I think the harm... He wants to keep paying tuition? I know he's probably not paying tuition. I don't know. He wants to keep being a student there, and maybe when he's 75 he'll... Well, I don't want to guess, but maybe after a long period he might get together a committee that will... Why not let him have that possibility? He does have the possibility to reenter the University of Michigan. He already has the possibility to transfer to another school. The notice of placing him on inactive status said, if you would like to come back, this is what you need to do. You're going to have to reapply. You're going to have to take your preliminary exams. We will keep on record... Why not allow him to stay without that? The university has resources, limited resources to be able to fund and to supervise doctoral students. Many of our departments are specialized, like the Department of Political Science. Finding four faculty members to... He has to find the four faculty members. Yes, but you're right. Making them available to serve and advise on this committee, if he gets them, limits the ability of these faculty to lend their expertise and support to students who have demonstrated that they are capable of achieving the academic rigor of the program. And the academic deference suggests that that's the role of the faculty to determine which students are capable of meeting its expectations and how to use its limited resources for those students. Mr. Vigil failed to meet those expectations. It should have not been a surprise to him or anyone else, particularly someone who taught at the university setting, that there would be a sunset, that you cannot be a perpetual student forever. At some point, the university, the department, is going to place you on inactive status. Let me ask you, what is the university's position on the property interest issue? Does the university agree that the plaintiff had a property interest in his academic pursuit here or not? Our position is that has not been decided, clearly, by the Supreme Court or the circuit. The practice has been, it's assumed that there is a property interest, perhaps even a liberty interest in continuing enrollment. And I think if you make that assumption and you apply the standards that have been established, we have met our procedural due process claim. I don't think that this is probably the right factual pattern to reach that particular issue of whether or not he had a property interest. I think we can continue to assume that one exists and apply the standards of notice and careful and deliberate consideration and uphold the trial court's decision that the University of Michigan was more than fair in providing over 16 years of both financial support and mentoring support, and that Mr. Vigil just plainly did not complete work that was satisfactory to the department. And it was appropriate for him to be placed on an inactive status and dismissed. All right. And you're saying that for purposes of our analysis, since you're saying we can assume without deciding that he may have had a property interest, you are conceding that he had due process rights that we could examine, just that you think we should decide those due process issues in favor of the university. That's correct, Your Honor. Brother Counsel did not address his First Amendment retaliation claim in oral argument, and I will just address that very briefly. I think the district court was quite correct in finding that there's no evidence in the record that Dr. Goldenberg was motivated by either his dissertation topic or his opinion on that topic in applying the department's standards to place him on inactive status. There's just nothing in the record to support that First Amendment retaliation claim. And therefore, again, we urge the court to affirm the district court's opinion. There is no need for this court to abandon its established and binding precedent that assuming a student has a property or a liberty interest in continued enrollment at a public institution, the only procedural due process that is required for an academic dismissal is notice of the faculty's dissatisfaction and careful and deliberate consideration. This is not a case where Mr. Vigil was unfairly denied a degree. It's unmistakable that he failed to earn the degree. Providing him with a hearing or a trial on this issue does nothing to further the fact that he failed to submit work that met the academic requirements of the university. No hearing, as this court has held, quote, no formal hearing is required for academic decisions because academic decisions require expert evaluation of cumulative information and are not readily adapted to the procedural tools of judicial administrative decision making. And we would argue that when looking at the whole context, the 16 year journey, that it's reasonable that someone in Mr. Vigil's position would know that he could not remain a doctoral student forever without having a committee, a chair, and successfully defending that dissertation. Let me ask you this, when was the date the first date that he provided a draft of his dissertation to the committee or the university, whoever he was to provide it to? There isn't anything in the record other than his affidavit, so there's no communication or email to verify his own representation. But what is in the record is Dr. Herzog told him that I will review your draft once you have established a full committee and the committee together will evaluate your work and provide you with feedback. Well he had a committee at one time, did he not? Yes. Then he began to lose members. So when he first formed his committee, I believe your honor, in September of 2003 shortly, yes, September 15, 2003, and that's record 36-4 in December of 2003, Professor Whitman said to him the committee will respond together to your draft In February, they talked with him and gave him notice that we have serious reservations about his paper. It's not two years, it's from September to February. What year was that? September 15, 2003 is when his dissertation committee has four members. The chair, Don Herzog Professor Whitman, Professor Simon and Professor Morag Levine. And by February 26, he's advised that they have serious reservations about his paper. And that's record number 36-5. And then in April, he is insisting that he be scheduled for defense he has loan repayments coming due I need my degree, and they tell him your paper, again, serious reservations about what you have submitted. If you want to bring us together for oral defense you need to know that you're going to have to do some serious revisions to this work. So the argument that he That's still in 2003? This is now April of 2004 In May of 17, 2004 he gets an email from one of his committee members also critiquing his paper. So it's not that he submitted this paper and no one paid attention to him for two years. He was advised identify a full committee. Once you have the committee we will review the paper and discuss it and provide you with feedback. It almost sounds like part of your argument is that it wasn't required I don't know what that is was out of compliance with the policies and procedures in that his committee wasn't properly constituted and he wasn't procedurally proceeding as required and he knew that to be the case himself for an extended period of time and I guess I don't want to put words in your mouth but if that's part of the argument then I guess the argument would be that there was no need under those circumstances for the university to provide notice because he knew or should have known himself that he was out of compliance. That's correct your honor. We've made that argument. Let's stand back just a little bit. I think you can still hear me. Yes. I pushed the red button and I don't know if that's going to be difficult for the court record. Your honor has accurately reflected our argument which is in the facts with this case Mr. Vigil clearly knew as early as 2004 that his work was insufficient and unsatisfactory. We argue that he is presumed to have notice of the six year time to complete degree requirement but even if he claims he didn't get notice he knew that he was not in compliance with department guidelines. At the time that he was dismissed he did not have a committee. He did not have a chair. He had not done anything to improve or change his research. There were fundamental problems with his paper. He was criticized for using improper social science methodology offering an opinion rather than research. These things would not have been cured if anyone had told him you have six more months or six more years or twenty more years. If he had done nothing else with that paper he knew as early as March of 2006 or even earlier in 2004 that he did not meet the academic standards of the political science department. Do we have a problem here because he was told that the reason for his dismissal was that he had violated this six year policy and it would appear that there really was no six year policy when he should have been told that he was being let go because his work was unsatisfactory. When you look at the letter of dismissal what the department chair told him is you failed to create a quality paper and defend it within six years and both are true. He failed to create a quality paper and he failed to defend a quality paper Well that's true but he wasn't told that there was a six year drop dead date or a six year requirement. We argue that it's presumed notice because it was departmental policy that applied to everyone in that department the fact that he claims he didn't know that should not be dispositive. But I thought that policy came into effect in 2001 and it did not apply to him because the policy said it would not apply to people like him who was already in progress. The policy was adopted by the faculty in December of 2000 Dr. Goldenberg issued a memo to all of the students saying if you have achieved candidacy which he then did in September of 2001 then you have six years to complete your degree so he had until September of 2007 But I thought your argument was that you win even if he didn't have the notice. Yes, I'm responding to your honor's specific question. I'm arguing both. Alright, I think we have your argument in hand. Thank you. I was standing in technological difficulty. Any rebuttal? Yes, your honor. Regarding the university's argument that the policy should apply based on the memorandum I think it's important to remember what the memorandum stated which is quote, all students admitted effective 2001 must achieve candidacy within three years. For students admitted prior to 2001, the current guidelines apply. On the actual document that is the policy that was passed and then instituted in 2001, in bold, all caps underlying typeface, it says effective for all students entering after 2001 not for all students achieving candidacy after 2001, but entering. And so I think that looking at the terms of that policy and the memorandum that accompanied it the policy didn't apply to Mr. Beadle. There was a previous policy which just said this is usually the amount of time that we're talking about. The previous policy, which is document 43-1 and it's on pages 31 to 38 of that document on page 31 says the length of time required to satisfy all the requirements for the PhD degree naturally varies. Depending on such considerations as whether a student has an MA and goes on it says it'll take longer for some, shorter for others. That same policy, though, required students to achieve candidacy within 4 years. It doesn't have 6 years at all in there? It doesn't say it's usually 6 years. Then it does say it's usually 6 years. I'd forgotten that portion of it. It does say it's usually done in approximately 6 years. So that sort of gives a time frame. It also says that candidacy must be achieved within 4 years. Mr. Beadle spent 10 years there. The university allowed him to do that and then achieve candidacy. So if you were thinking it's roughly 6 years and all of the factors suggest it should have been earlier rather than later, I'm not seeing how that policy just by itself suggests that his time was up. The policy itself doesn't set a time for him. No, but it says it's more or less 6 years depending on considerations and most of the considerations suggest it's long past. Are you saying the policy has to have a deadline? I'm not saying the policy has to have a deadline. So the policy could be sort of a general guideline plus some factors. As long as he receives sufficient notice. But he got notice of the first policy, right? Yes. Which seems to say, if I'm understanding you right, it's 6 years plus or minus depending on considerations. It does say that. That's the vague policy that he's operating under. That, if you will, is the scope of his property interest. And I don't see why this doesn't meet that. And that same vague situation regarding timelines says to reach candidacy within 4 years and they allowed him to take 10 to do it. So they gave him more than he was entitled to under the policy then, right? And also set up a standard for him to believe that he would have more time if he needed it. This is the same individual who spent 3 or 4 of these years battling cancer and no one says, alright, go ahead, stay, you'll be here. Now he's trying to form a committee. People are abandoning his committee, walking off of his committee. He's trying to find new people. He goes all the way to the University of Colorado Boulders Law School to find someone that will work with him on the First Amendment issues because no one at the University of Michigan will. So the idea that he's out of compliance is first of all not for a lack of trying and then when we look at the notice he received, he had not only no notice of the danger of being dismissed but facts within this record that suggest he was under the impression rightfully so that he would have more time to do this. And then unilaterally they decided to apply a policy that did not account for his specific facts and use that as a basis to get rid of him because statements were made such as, I wish I'd washed my hands of him years ago. Are we going to let him fade away? He's kind of crazy. And so they say, alright, we're going to get rid of you. We're going to use this policy and they get rid of him. The situation here is that he deserved that notice. There's facts, there's disputed issues of genuine material fact that suggest the notice was insufficient and that Mr. Vigil should be allowed to have a trial on that matter as well as the First Amendment which is in our brief and I apologize for running out of time to address that. Therefore, given these considerations, Mr. Vigil requests this court reverse the district court and remand for a trial. Alright, thank you very much. Arguments were good on both sides. The case is submitted.